Good morning, Your Honors. May it please the Court, Eric Barron on behalf of Mr. Demetrius Davis with me at Council Table as Heath Schneiblock. This case is about a premature wiretap. Particularly, whether the wiretap in this case that was applied for on March 23, 2016 was premature as it relates to Mr. Davis, who was only developed as a suspect ten days prior to the actual application. And within that ten days, there was literally no investigation as it relates to Mr. Davis. Whether or not the District Court abused its discretion in allowing the government to, one, rely on bootstrapping of information from a prior application a month earlier in February 2016, and general boilerplate language of facts that were unsupported by any insufficient attention to standard, normal investigative techniques as required under the statute. I think the... Well, as I understand it, the statute, they're either required or the government can show or explain why they would not bear fruit in a particular case and therefore can convince a judge to forego those. And as I understand it, that's the government's position in this case. Why was that wrong? So it was wrong, Your Honor, and I think particularly in light of the timeframe that we have here, the government conducted a three-year investigation which led to the initial wiretap of co-defendants. They go up on that wire February 17, 2016, and then what they have is my client shows up on the wire twice, once in necessity statement in the affidavit that they can't do for a variety of different reasons. If you look at all of those things, they did all of those things for the prior application for the co-defendants with similar challenges in a similar area. Let me ask this. That raises the question in my mind. Looking at the affidavit, it says the goal of going up on Mr. Davis' phone is to identify his source of supply. And so, you know, that's what the affidavit says. They tried those various techniques on targets phone one and two, Mr. Fletcher and Mr. Davis, accepting the facts in the light and most favor of the government. I understand. I'm not trying to get you to concede he was a source of supply, but there was reason to believe he was a source of supply. All of those things didn't identify Mr. Davis. So they identify Mr. Davis. They develop probable cause on him. The goal is to identify his supply. What step do you believe would have been effective in identifying Mr. Davis' source of supply that was not used? That's what I'm trying to figure out. What's the best one or what's the set of ones that you think would have allowed them to reach their goal of identifying Mr. Davis' source of supply that they didn't try or they didn't utilize? So to be clear, the standard under the statute is not whether it would have been effective, but whether it would have, you know, whether they tried and So let's look at the things that they outlined themselves in the affidavit. Rather than run through it, just tell me which one you think, like, give me the best example and then we can go to the second and third. What's the thing that you think would have identified Mr. Davis' supplier that they didn't try? So various types of surveillance, including mobile surveillance, stationary surveillance, GPS, they could have done search warrants. And that would have identified the supplier because they would have known who Mr. Davis was meeting with and they could have assumed that that meeting was drug related? I mean, how would that establish who the supplier is? If you just know, I mean, you know, you drive around all the time, you meet with lots of different people. Just because you're meeting with someone most obviously does not mean you're engaged in something nefarious with them or that you're engaged in the practice of law with them. You might be meeting them because they're a high school friend. So surveillance, I'm not sure how surveillance gets us there. So the overall goal of the, as outlined in the affidavit, is to figure out who else is involved, including any other sources of supply. Who else is involved in the drug dealing though, right? Who is involved in the drug dealing. And so if you're doing surveillance and you gain information on various locations where deals are being done, where drugs are, who cooperators are. If you're just doing surveillance though, how would you know that drug deals are being done at those locations? As opposed to I'm meeting my high school buddy to talk about old football games. Well, sure, you don't absolutely know for sure. But this is the things among many of things that you do with an investigation to learn who may or may not be involved. And you develop other techniques and sources. And all of that together leads you to the goals of the investigation is to find out who else is involved, including other sources of supply and what other offenses may be involved in this instance. The application and the statute requires not that you definitely will find out from any one of these different investigative techniques, but that you go through the process of these less invasive investigative techniques before you go to the extraordinary investigative techniques of going up on an individual's phone. But that suggests, Mr. Barron, that you're imposing an absolute requirement in every case. But that's not the test, obviously, right? Well, the statute requires in absolutely every individual affidavit before you are authorized to go up on a target that, yes, you show through a necessity statement that you've gone through normal investigative techniques, you've tried and failed. Or you explain why those wouldn't work. Or you explain why they wouldn't have been successful. What do you think the government would have had to have shown in this case to meet that burden? Well, I think they would have shown much more in the ten days in which they developed Mr. Davis as a target, that confidential informants were actually unavailable or would not be useful within the span of ten days. Well, the government responds, at least with respect to high-level suppliers, the use of CIs, I mean, that wouldn't work. Why couldn't the magistrate credit that? The magistrate couldn't credit that because, you know, the language within the affidavit was just conclusionary statements. Nothing specific as it relates to Mr. Davis and the lack of any confidential informants. Does the fact that physical surveillance was affected, at least according to the subsequent search warrant, help you in any way? I'm sorry. There was physical surveillance. And then according to the subsequent search warrant, it happened to be effective. There was subsequent to the wire, there was physical surveillance and a search warrant. And in fact, they did a number of these investigative techniques that they could have done before the affidavit for the wire. Suddenly they were effective and warranted after. But that's the difference between you can do surveillance on somebody and know that they're going to this location, but you don't know what they're doing there unless you are on the phone and can identify this isn't a high school friend, this is a drug dealer, right? So I'm arranging a drug deal. So then surveillance confirms what you can identify on the wiretap. Otherwise, all that you know from surveillance, just like if somebody followed you around, they would know the places you went, but they wouldn't otherwise know that one's your mother's house, one's your friend from high school's house, one's your law partner's house or office, right? The reason surveillance is used after you get a wiretap is because then the surveillance is helpful. Before, it just develops a pattern of life which doesn't tell you anything about who's participating in the drug dealing as opposed to who your client had some interaction with, legal or illegal. There's no question about it that going up on a wire in conjunction with other investigative techniques gives you a whole lot of detail, a whole lot more than you would otherwise have. But that's not the question here. The statute requires you to go through other less intrusive investigative techniques and to show that you've done that before you're allowed to then go to this extraordinary step of going up on someone's phone. The question is not whether it's the best investigative technique, but whether you've gone through the steps necessary because the Congress has decided that this extraordinary step requires one to go through more steps before we go that far. And the government here jumped the gun. They jumped the gun. It must have been very frustrating to go through three years of a very thorough and particularized investigation, go up on a wire on the co-defendants. And it must have been, on the other hand, very exciting to then find what you think is a source of supply a few days later after going up on that initial wire. But you have an obligation as it relates to that new target to go through the due diligence necessary that Congress laid out before you go to that extraordinary step and decide these things, this mix of investigative steps is not enough. The alternative, which is just Diaz's point from earlier, is they either have to try them. You keep saying they have to try them. Or they have to explain why they're not reasonably likely to succeed. And so you go through the affidavit and they say, so confidential sources. They identify in a paragraph. We do not know any confidential source or undercover agent who can even meet with Mr. Davis, much less purchase any narcotics from him. They go through surveillance and they explain why it's not effective. That is the alternative. Your point is you can either try, and I admit in lots of instances here they didn't try. But the point is they also can explain why it's not likely to be successful. If you don't have a confidential source, you can't use a confidential source. I mean, that's sort of the baseline. Absolutely, Your Honor. The thing is in this case they didn't really show why, as it relates to Demetrius Davis, why they didn't have the confidential sources, why they weren't able to develop confidential informants or use undercover agents. And just to remind the Court, after only ten days, if you're really serious about developing confidential informants and the like, I would submit on its face it lacks credibility that after ten days they're making this generalized statement that would be applicable to any other narcotics investigation out there that they don't have access to. The confidential informants to take that step. They do the same thing as it relates to visual surveillance and location monitoring. As it relates to GPS tracking. You still have the same problem with confidential sources. I don't think you get there, but I didn't tell you anything about the goal of the investigation, which is identifying Mr. Davis' source of supply. It may help prosecute Mr. Davis if you had a confidential source, which they don't have. Necessity doesn't mean doing things that you can't do. But it still wouldn't solve the goal of the investigation, which is to reach Mr. Davis' supplier. And then to reach the supplier of Mr. Davis' supplier. No argument with that, Your Honor. I would submit that I think you're being much more narrow than the actual goal as it's laid out in the government's affidavit of this investigation. It's not simply to find Mr. Davis' source of supply. It's to find out who else, what other individuals or co-conspirators there are, what other offenses are being made here. It's much broader than simply Mr. Davis' source of supply. Thank you, Mr. Brown. Thank you. Mr. Hines. Good morning. Good morning, Your Honors. May it please the Court, my name is Derek Hines. I represent the United States. I was trial counsel in this matter. I'll start by addressing the appellant's claim that the District Court abused its discretion by finding necessity in this case. And to do that, I'd like to sort of take the Court back just for a moment as to the investigative steps that law enforcement did take in this three-year period. The investigation began in approximately 2013 when law enforcement intercepted a series of parcels. One of the parcels had two and a half kilograms of cocaine. The other parcel had almost $10,000 in cash. Law enforcement, through phone analysis, were able to link those parcels to an individual named Ron Fletcher. He was one of the co-defendants in this case. And they began investigating Mr. Fletcher, who was a mid-level trafficker in and around the Cambridge area. From Mr. Fletcher, they began conducting surveillance on Mr. Fletcher. They saw him engage in hand-to-hand transactions with another co-conspirator and charge defendant in this case, Ty'Andre Johnson. From there, they utilized a number of CIs to make controlled purchases from Mr. Fletcher and Mr. Johnson because they were, as indicated in the briefing, mid-level traffickers to low-level traffickers that CIs had access to. From those controlled purchases, law enforcement began conducting trash pulls. These were for Mr. Fletcher's residents. Those were unsuccessful and did not yield anything of evidentiary value. They then searched a series of phones that they obtained from Mr. Fletcher's brother. Those phones were drug phones used to distribute drugs. From there, they then installed a series of pull cameras at Mr. Fletcher's house, at Mr. Johnson's house, and other areas in Cambridge to try and ascertain who was giving Mr. Fletcher and Mr. Johnson all of this cocaine. It wasn't until the wiretap in February of 2016, when for the very first time, they learned of Mr. Davis, who was supplying massive amounts of cocaine to these individuals. As this court has said, and clerkly, the government is not precluded from carrying the investigation further. In drug investigations, it's reasonable and prudent for the police to work their way up the chain to try and get to the individuals who are distributing the most cocaine, the most deadly drugs, on up the chain. In Smith, this court said that 2518 was designed to ensure that wiretapping is neither routinely employed nor resorted to in situations where traditional investigative techniques would suffice. Here, it was not the first step. Law enforcement had conducted a lengthy investigation as the defense concedes, and the traditional investigative techniques weren't working. From there, after that first wiretap began, Mr. Davis was intercepted immediately. It was on February 25th of 2016. It wasn't 10 days of investigative work by law enforcement of Mr. Davis prior to the second wiretap. It was actually about 30 days before the second wiretap was obtained in late March of 2016. During this time period, what the police did to investigate Mr. Davis specifically was they installed a pen register on the defendant's phone. They subpoenaed historical toll records to try and ascertain who the defendant was speaking to. They analyzed patterns of contact by the defendant. They asked their confidential sources that they had access to whether any of them had access to the defendant and was capable of engaging in a controlled buy, a controlled purchase, introducing an undercover. But to no avail. Those confidential sources did not have access because Mr. Davis was a high-level trafficker. They conducted mobile and physical surveillance. They did do that. That's outlined in the affidavit. On March 1st, 2016, they surveilled the defendant meeting with Mr. Fletcher. During this meeting, he engaged in a series of counter-surveillance tactics, changing up the meat location at the last minute. So law enforcement's investigative tactics that they tried to use there were thwarted by how this organization was operating on the surveillance patterns. They also went to Mr. Davis' residence, drove by there on a number of occasions. There's a series of aerial photos in our brief as well as a drive-by video that show the police were actively looking at Mr. Davis' residence, his location, they were trying to further their investigation. They then obtained a GPS for one of the defendant's many vehicles and they conducted a financial investigation utilizing wage records from the state of Maryland. It was only at this point... They didn't actually use the GPS, is that right? At the time of the application, they had received authorization for the GPS but they had not yet been able to install it by virtue of the fact that Mr. Davis had not yet utilized his Mercedes in a manner that they could get to it to install that. Is your argument that necessity as to Fletcher and Johnson equals Davis or are you arguing that what HSI did between March 1st and March 23rd was enough? What HSI did during the 30 days that they knew of the defendant, we would submit that that was sufficient for necessity in this case. As to the prior tactics, I think that's of use to this court because that informs the agent's beliefs as to their viability throughout this case. So for example, Mr. Fletcher, they did a trash pull at his house and it was unsuccessful. A trash pull is one of only two tactics in this case that is identified in the affidavit that the police did not attempt to use as to Mr. Davis. So you're not arguing that necessity as to Fletcher and Johnson equals Davis? That's correct, Your Honor. I think it's an individualized assessment on the face of each affidavit. But the court can consider the steps that law enforcement took in coming to their reasonable conclusion whether the technique is likely to succeed or fail. So the two techniques that law enforcement didn't conduct, I mentioned the trash pull, undercover agents was the other tactic that was identified by the affidavit. As this court is aware, that's highly difficult to do unless you have in many instances, but particularly if you don't have a confidential source that can introduce the undercover to the supplier. So the police did consider that tactic to explain why it was unreasonable in this case. And then with respect to grand jury subpoenas, that was the only other technique that was not attempted. That's because the affiant, as he indicated, he believed that the witnesses, the customers, things of that nature were unlikely to provide the truth. And if they did receive a grand jury subpoena, they would likely thwart the investigation and possibly tip off Mr. Davis. In United States v. Smith, this court held that the burden upon the government to show the inadequacy of normal investigative techniques is not great, and the adequacy of such showing is to be tested in a practical and common sense fashion that does not unduly hamper investigative powers of law enforcement agents. I would submit to the court that is, what happened in this case in Judge Blake, the district court's assessment of Judge Berdar's wiretap order was not an abuse of Judge Blake's discretion to find necessity in that case, and this court should likewise afford considerable deference to the district court. Segueing just a little bit here to good faith, I would note that because of what the law enforcement put in their affidavit having received the wiretap order from Judge Berdar, they could rely in good faith on that wiretap order, even if this court were to consider that the attempts that they made and the explanations they gave for necessity were not. Have we ever held that the good faith exception to the Fourth Amendment exclusionary rule applies to a statutory violation? I'm not sure you've got to get here, but do we have a case where we've applied the good faith exception if we found the government violated 2518's necessity requirement? I believe the Oriaki case, the argument from the defense was that there were similarities between the wiretaps and there was a necessity argument baked into that case and the government noted that good faith would apply and the appellate court did address that as well. This also, of course, segues into the probable cause analysis. I'll just address that briefly because that is a point that the defendant raised in his brief. He challenges only the probable cause as to the wiretap of his phone and concedes that there were sufficient probable causes to the first phone. The text messages and the calls referenced in the brief are frankly damning. The defendant is discussing with Mr. Fletcher in intricate details the crystals and the cocaine, the yellow girl crystal, using coded terms, that girl, even asks Mr. Fletcher to put some of the cocaine on his tongue to see if it will numb it. These are highly damning conversations referenced in the series of calls including a text message which the defendant does not address in his reply where Mr. Johnson and the defendant get in a verbal argument over the phone about a drug that the defendant was attempting to collect and what Mr. Johnson says is don't bring your drugs around me no more, man, you bad for business. These were clearly indicative of drug trafficking and Judge Blake did not clearly err in her finding that Judge Berdar had a substantial basis for the determination of probable cause in the wiretap affidavit. In the defendant's brief he also argues that the scorch should suppress the evidence obtained from the seizure of his white box truck. There was cocaine that was in the white box truck and I'll just address that briefly. In order for him to prevail before this court he would need to convince this court that it should go against several Fourth Circuit cases that find that a defendant does not have an expectation of privacy in an asset if and when that defendant denies ownership of that asset. Second, he would have to convince this court that it should go against its prior decision in Patterson and find that a search warrant for a property does not encompass the vehicles that were on that property. And third, he would have to articulate a reason why the automobile exception would not apply despite the fact that the police were lawfully present in the driveway to execute the search warrant. With respect to the denial issue, as this court is aware from the briefing, right after his arrest the defendant received his Miranda rights, he acknowledged his Miranda rights, he waived Miranda, and then he made statements to the police denying ownership of the white box truck parked right outside his house. And in Leszek this court has held that a denial constituted abandonment. It likewise in Hahn, Washington, McNeil, these are cases cited in our brief, held that wherever a defendant has denied ownership of an asset that he no longer has an expectation of privacy to later contest his search. And the search warrant here clearly was worded in the matter of the search of the property or premises, 7014 Beulah Road. And then it went on to describe in the attachment after 7014 Beulah Road the description of the residence itself. It is a very hyper-technical and non-commonsensical reading that this court would have to give to that to limit the police to be able to only search within the residence which is what this defendant would like this court to do. The natural and probable reading of that search warrant granted the police authorization to search the white box truck which was parked in the vicinity right next to the house. And of course this was a drug-related warrant so when the police went up to execute the search warrant at the residence they brought a canine onto the premises and the canine alerted to the detection of narcotics in that white box truck parked right next to the house where the police were lawfully present. So even if this court were to find that Patterson should be overturned the automobile exception would apply. So in sum, Your Honors, unless the court has any further questions for me in conclusion we'd ask that this court find that Judge Blake did not abuse her discretion in finding that Judge Berdar found sufficient necessity in the wiretap affidavits and Judge Blake did not clearly err in her determination that Judge Berdar had a substantial basis to conclude that there was a probable cause in the wiretap. Thank you, Mr. Hines. Mr. Barron, you've got some time for rebuttal. Thank you, Your Honor. So the government spends a lot of time on the necessity requirements on everything it did on a prior wiretap application. Three-year investigation, I submit that that investigation was quite thorough and particular to the co-defendants in that case, but not as it relates to Mr. Davis. Three-year investigation for that other application thoroughly laid out, not so much for what is really a 10-day investigation of Mr. Davis and an affidavit that basically suddenly excuses all of the normal investigative techniques that were used in that prior application, but they decide suddenly now they would not be unsuccessful. They actually were successful. The trash searches, if you look at the joint appendix at page 85, there were at least two pulls. They found evidence of drug packaging. They found evidence of where geographically the sources of supply were coming from. Poll cameras, they used three poll cameras in the prior application, they laid that out in the prior application for the co-defendants in the joint appendix at page 85. But suddenly these things won't do for Mr. Davis. My recollection is the government alleges that Mr. Davis lived in a largely rural area that made it difficult to install poll cameras in a place where they would be effective. The magistrate judge, I guess, apparently bought that. Is that wrong as a matter of fact? Bought that regardless of the fact that the co-defendants were in the same or similar general area with the same and similar challenges. If you look at the government's brief, they have pictures at pages 14, 15, and 25 where you see a number of polls that could be used for such cameras. Cameras which would indicate... You've got to pull a truck up to that pole and run a guy up a ladder and put a box on that pole. That's what they're saying. They're not saying they couldn't find a tree or somewhere to put it. The point is you've got to take a utility vehicle out. If you take a utility vehicle out across the street from a rural house, this is what the affidavit explains, and run a guy up the pole and stick a box on it with a little window on it that stands out a fair bit. But somehow in the same general area, it wasn't a challenge enough for them not to put three pole cameras up for the co-defendants. The prior affidavit, the prior application for warrant actually shows that there are a number of standard, normal investigative techniques that were used, were successful to some degree, but suddenly aren't good enough for this second application. The government argues that what they did from March 1st to March 23rd was enough to satisfy the necessity requirement. And I think on that face, on his face, your honor, that's just not credible. They developed him as a suspect or target after two phone calls, one on February 25th, the last one March 12th. In between, on March 1st, they're surveilling Mr. Fletcher, not Mr. Davis. And based on that, there's a brief meeting, and so based on those two phone calls, that brief meeting, they say, okay, he's one of our guys. So now it's time to investigate. Now it's time to use all those standard, normal investigative techniques. Maybe you try them, maybe they fail, maybe you determine after some reasonable time and investigation that these things won't work or they're dangerous. But within the span of time that was done in this case, there's no way that any of these excuses within the affidavit are acceptable and certainly don't meet the criteria in the statute. Therefore, I think it's clear that the court below abused its discretion. It missed this. It missed this. And the state, the government requires more for such an invasive investigative technique as a wiretap. Thank you, Mr. Barron.
judges: Albert Diaz, Henry F. Floyd, Julius N. Richardson